1.    02-CV-10200 (KMK)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RONALD AMBROSE,
                                  Plaintiff,

-against-

THE CITY OF NEW YORK, DETECTIVE VITO BUONSANTE, LIEUTENANT SHIELDS, DETECTIVE JOSE ROSARIO, DETECTIVE DAN DANAHER and JOHN and JANE DOES,
                                  Defendants.

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR PARTIAL MOTION TO DISMISS**

*MICHAEL A. CARDOZO*
*Corporation Counsel of the City of New York*
*Attorney for Defendants City, Buonsante,*
*Shields, Rosario and Danaher*
*100 Church St.*
*New York, N.Y. 10007*

Of Counsel:  Leah A. Bynon
Tel:  (212) 788-1029

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x

RONALD AMBROSE,

                                          Plaintiff,

                            02-CV-10200 (KMK)

                -against-

THE CITY OF NEW YORK, et al.,

                                          Defendants.

------------------------------------------------------------------------ x

## DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR PARTIAL MOTION TO DISMISS

### PRELIMINARY STATEMENT

Defendants, City of New York ("City"), Detective Vito Buonsante, Detective Dan Danahar, Jose Rosario, and John Shields respectfully submit this reply memorandum of law, pursuant to Rule12(c) of the Federal Rules of Civil Procedure, to dismiss all <u>Monell</u> claims pertaining the District Attorney's Office, or in the alternative, request bifurcation of <u>Monell</u> discovery.

### STATEMENT OF RELEVANT FACTS

The facts relevant to defendants' reply memorandum are set forth in the "Statement of Relevant Facts" in defendants' original moving brief, dated November 17, 2004. However, to the extent that plaintiff relies on grandiose statements of innocent and injustice, unsupported by admissible evidence,[1] such assertions should be disregarded as mere hyperbole intended solely to influence the Court's opinion of the underlying facts.

---

[1] For example, in his introduction plaintiff states "Ronald Ambrose, an innocent man, was prosecuted for murder…the New York County District Attorney's Office, faced with overwhelming proof of Mr. Ambrose's innocence, nonetheless, caused him to remain in jail for 26 months, and put him through the ordeal of fighting for his life…" (Pls. Opp. pg. 1). Despite Mr. Ambrose's acquittal at trial, there existed ample evidence establishing probable cause that Ambrose did in fact commit the crime charged. It bears noting that the fact that plaintiff was acquitted at a criminal trial, where the burden of proof is much higher than that of a civil trial, does not equate to innocence but merely indicates that the jury did not believe the case was proved *beyond a reasonable doubt.*

**POINT I**

**PLAINTIFF HAS NOT ALLEGED AN UNDERLYING CONSTITUTIONAL VIOLATION SUFFICIENT TO SUPPORT ANY MONELL CLAIM.**

Plaintiff, in his opposition papers, concedes that their Monell claim against the District Attorney's Office is limited to the theory that the New York County District Attorney's Office failed to train, supervise, and discipline prosecutors in four areas – (1) the presentation of exculpatory evidence to the grand jury; (2) the presentation of misleading evidence to the grand jury; (3) the timely production of Brady material to defense counsel; and (4) the prosecution of defendants in cases in which there is no reasonable likelihood that guilt can be proven beyond a reasonable doubt. (Pls. Opp. pg. 4, ¶ 2). Plaintiff's opposition papers mainly center around the purported Brady claim, although plaintiff does set forth a half-hearted argument as to why the remaining theories should not be dismissed.

A. Plaintiff Cannot Support a Monell Claim Based Upon a Prosecutor's Obligation Not To Prosecute The Innocent.

Plaintiff, in his reply papers, fails to rebut defendants' argument as set forth in their November 17, 2004 papers with respect to this proposition. Plaintiff only states in conclusory fashion that he has set forth a proper Monell claim based on his "Don't prosecute the innocent" theory. As support for this proposition, plaintiff only cites to the underlying facts of the instant case and fails to cite to any controlling authority buttressing his claim. (See Pls. Opp, pg. 6, ¶ 3). As set forth in defendants' original moving papers, the Second Circuit has opined that a "failure to train" claim cannot be premised upon "misdeeds [that] relate to such basic norms of human conduct—the duty not to lie or persecute the innocent." Walker v. City of New York, 974 F.2d 293, 301 (2d Cir. 1992); See also Covington v. City of New York, 916 F. Supp. 282, 285, 290 (S.D.N.Y. 1995)(dismissing allegation that DA Morganthau had a policy of commencing prosecutions without probable cause was legally insufficient to state a viable "failure to train" claim); Cooper v. Masiello, 2000 U.S. Dist. Lexis 5146, 11-12 (W.D.N.Y. Apr. 14, 2000) (claim against a District Attorney that was "characterized as a "don't prosecute the innocent' claim'" failed to state a viable cause of action under Walker). Plaintiff's

2

theory of liability falls precisely into such a category. As such, any purported Monell claim premised upon this theory cannot be the basis of a viable "failure to train" claim.

B.  Plaintiff's Claim That the District Attorney's Office Presents Misleading Evidence to the Grand Jury And Fails to Provide Exculpatory Evidence Fails as a Matter of Law.[2]

Plaintiff now alleges that because the prosecutor did not present the testimony of Duane Thomas at plaintiff's grand jury proceeding, he was deprived "of the opportunity to have the grand jury find that there was no probable cause."[3] (Pls. Opp. pg. 7). Plaintiff argues that, even if there is no federal constitutional right to a grand jury, once a state confers on its citizens such a right, it is a due process violation for a state actor to manipulate the system in order to negate that right. To support his position, plaintiff cites to two cases, Zinerman v. Bunch and Morrissey v. Brewer – each of which do not pertain to grand jury proceedings and are inapplicable to the instant question of law. In fact, both Zinerman and Morrisey pertain to an individual's procedural due process right to a hearing prior to being deprived of their liberty. What plaintiff seemingly ignores is the fact that, as set forth by the Supreme Court, a prosecutor has no constitutional duty to present exculpatory evidence to a grand jury. United States v. Williams 504 U.S. 36, 51-52. See also, Patterson v. Pool, 02 Civ. 9311 (GBD)(JCF), 2004 U.S. Dist. LEXIS 16604 at *10-11 (S.D.N.Y. August 18, 2004) (same); Savino v. City of New York, F.3d 63, 75 (2d Cir. 2003) (New York prosecutor under no duty to present every item of arguably exculpatory evidence in seeking an indictment) citing People v. Mitchell, 82 N.Y.2d 509, 515, 605 N.Y.S.2d 655, 658 (1993) ("The People maintain broad discretion in presenting their case to the Grand Jury and need not seek evidence favorable to the defendant or present all of their evidence tending to exculpate the accused."). Consequently, plaintiff cannot pursue any Monell claim on this theory of liability.

---

[2] Plaintiff's claim that the prosecutor failed to provide exculpatory evidence to the jury is the basis of plaintiff's claim that misleading evidence was presented to the Grand Jury. Simply put, these theories of liability are the same.

[3] Interestingly, plaintiff does not cite to any other facts to support their claim that the prosecutor presented misleading evidence or withheld exculpatory evidence. Plaintiff cannot cite to the "Andrew Rison" information because the prosecution was not even aware of the existence of Andrew Rison at the time of plaintiff's October 25, 1999 grand jury indictment.

C.  Plaintiff's Claim of Purported Brady Violations.

Plaintiff argues that he has, in fact, set forth a <u>Brady</u> violation and that defendant's make a "no harm, no foul" argument which has no basis in law.  Significantly, the only evidence that plaintiff asserts was <u>Brady</u> material is ADA O'Connell's alleged failure to disclose information obtained in an interview taken by Detective Buonsante.  The information pertained to an individual named Andrew Rison, suspect Damon William's cousin, which was memorialized in the police department's Complaint Follow-up Report and notes. (Second Amended Complaint ¶ 35-36; Exhibit A annexed to the Bynon Reply Declaration, Complaint Follow-Up and handwritten notes of Detective Buonsante). Rison purportedly told the police that Williams had admitted to his participation in the shooting to him, told him that plaintiff  "had nothing to do with the shooting" and that Williams believed that plaintiff had been mistaken for him.  (Second Amended Complaint, ¶ 35).[4]

Here, plaintiff's failure to train premised upon <u>Brady</u> obligations must fail for numerous reasons.  As set forth at length in defendants' November 17, 2004 motion papers, since plaintiff was acquitted at trial, as a matter of law, no constitutional violation occurred as a result of that non-disclosure.  <u>See</u> <u>Strickler v. Greene</u>, 527 U.S. 263, 281-82 (1999). Indeed, in order to set forth a <u>Brady</u> claim a litigant must show that the suppressed evidence was "material." <u>See</u> <u>United States v. Payne</u>, 63 F.3d 1200, 1208 (2d Cir. 1995).  Materiality is only demonstrated "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."  <u>United States v. Bagley</u>, 473 U.S. 667, 682 (1985).  Since plaintiff was acquitted, there cannot now be a finding of a <u>Brady</u> violation.  Tellingly, plaintiff necessarily concedes that every case cited in their Second Amended Complaint involved an individual who was *convicted*. Plaintiff fails to cite to *any* cases where a <u>Brady</u> violation was found where an individual was acquitted.  Despite plaintiff's protestations to the contrary, the difference strikes at the very core of whether a claim of constitutional dimension has arisen.

---

[4] Plaintiff does not allege that the police failed to disclose this information as ADA O'Connell stated in her deposition that the documents were in her possession and were in fact, included in the DA file.

Plaintiff resists this conclusion. Plaintiff essentially argues that whether an individual is acquitted or convicted is of no moment and to hold otherwise (i.e. "no harm, no foul") would result in a "fundamental unfairness." (pls. Opp. pg. 10, ¶ 4). Plaintiff states that, in the context of a civil action, if the plaintiff demonstrates that the withheld document was exculpatory, then there is a Brady violation and the effect of withholding – i.e the issue of materiality – determines "the extent of the constitutional deprivation and ensuing damages, not the fact of the deprivation." (pg. 9, ¶ 1). Plaintiff further states that the "materiality requirement…does not define the constitutional deprivation, it just helps determine the effect of that violation on a conviction." (Pls. Opp. pg. 9). Plaintiff cites to various hypotheticals as to what *may* have happened if plaintiff had the Rison information, such as the opportunity to make a compelling bail argument. (pls. Opp. pg. 11). These arguments are simply guesswork, speculative and conjecture, which cannot defeat this motion.

Plaintiff cites to no authority to support his proposition.[5] Indeed, plaintiff is flat wrong when he assert that in a civil rights action, a Brady violation is established merely by showing that an exculpatory document has been withheld. This is so because the constitutional right Brady seeks to protect is a defendant's right to a fair trial and confidence in the outcome of the trial. In other words, while a prosecutor may have a constitutional duty to provide exculpatory information before or during trial pursuant to Brady v. Maryland, a constitutional violation can only be found retrospectively in the

---

[5] In a string cite, plaintiff cites to Carroccia v. Anderson, 249 F. Supp. 2d 1016 (N.D. Ill. 2003), which is distinguishable from the instant case. In Carroccia, the Court held that an acquitted defendant will not be barred from pursuing a Brady claim, provided the defendant can show that had the evidence been disclosed in timely fashion, "it could be expected to affect the outcome of the case." Id. at 1024. The Carroccia court was admittedly at odds with other 7th Circuit district court cases including Gregory v. Oliver, 226 F. Supp. 2d 943 (N.D. Ill 2002), which rejected this result. Moreover, Carroccia involved a failure of police officers to provide exculpatory information to prosecutors. In a subsequent case, Daresse Kidd b. City of Chicago, 02 Civ 9534, 2003 U.S.Dist LEXIS 17037 (N.D. Ill Sept 26, 2003), the Court, accepting the reasoning in Carroccia, opined in dicta that to be actionable, a plaintiff would "have to prove that the withheld evidence was material, which would be difficult to prove in the context of trial since he was acquitted, although knowing failure to provide prosecutors with evidence that would likely have led them not to prosecute would be material" Id. at n1. The instant case is distinguishable in that the prosecutor admittedly possessed the alleged exculpatory information and decided to continue the prosecution based on the strong evidence against plaintiff and the potential unreliability of the hearsay evidence. Moreover, the modified materiality requirement set forth in Carroccia is not supported by any Supreme Court or Second Circuit law. More importantly, since the rationale of Carroccia is, for the reasons discussed infra, inconsistent with the fundamental purpose of Brady (not to mention being at odds with controlling precedent in that circuit), it should not be followed here.

context of challenging a conviction. This principal is set forth very clearly by the Second Circuit in <u>US v. Coppa</u>, where the Court stated the following:

> Although the government's obligations under *Brady* may be thought of as a constitutional duty arising before or during the trial of a defendant, the scope of a government's constitutional duty—and, concomitantly, the scope of a defendant's constitutional right—is ultimately defined *retrospectively* to the likely effect that the suppression of particular evidence had on the outcome of the trial.

<u>U.S. v. Coppa</u>, 267 F.3d 132, 140 (2d Cir. 2001) (emphasis added) (citing <u>Strickler v. Greene</u>, 527 U.S. at 281).

As such, contrary to plaintiff's assertions, the materiality requirement (whether there is a reasonable probability that the evidence would have produced a different result at trial) does in fact define the constitutional deprivation. A <u>Brady</u> violation only arises when an individual is wrongly convicted based upon improper withholding of exculpatory information – obviously not the case here. Indeed the "harm" of unjust conviction defines the constitutional deprivation of <u>Brady</u>.

As a result, plaintiff's reliance on caselaw involving convicted individuals who later secured <u>Brady</u> reversals is therefore completely misplaced and cannot be used to buttress a <u>Monell</u> claim for failure to supervise. Plaintiff's situation is fundamentally different in that, unlike the cases cited, there has never been a judicial finding by the Supreme Court or the Second Circuit that an acquitted individual suffered a violation of their constitutional rights based on an independent <u>Brady</u> claim. Significantly, plaintiff has not, and cannot, cite to any case where a court determined that an acquitted individual had suffered a violation of a Constitutional Right with respect to <u>Brady</u> materials. Indeed, plaintiff reliance on <u>Babi-Ali v. City of New York</u>, 979 F.Supp. 268 (S.D.N.Y. 1997) to support the proposition that plaintiff sustained a constitutional injury is misplaced because the plaintiff in that action was convicted and his conviction was later overturned on the basis of prosecutorial misconduct, including the withholding of exculpatory materials.

Although plaintiff protests that such a result is injust or unfair, it is indeed the law. To hold that an individual's constitutional rights were violated whenever exculpatory material is not disclosed, regardless of the outcome of trial, implicates very serious policy considerations. Such a

holding would allow acquitted litigants to pursue civil claims based on mere speculation of allegedly "exculpatory" materials affect on the prosecution and would, in fact, create an entirely new Section 1983 claim that currently does not exist.[6] Moreover, it would allow convicted litigants to circumvent the proper criminal court challenges to their conviction by attempting to obtain a determination in the civil context that their constitutional rights were violated. If plaintiff's position were correct, even a convicted defendant, who could not secure a Brady reversal because he could not make the requisite showing of materiality, would be able to pursue a civil Brady claim, as his failure to demonstrate materiality in the civil arena would only be relevant to the issue of damages. Obviously that is not the law. Indeed, plaintiff asks the Court to travel down a dangerous road of creating (or at the very least, dramatically expanding) a constitutional right where no such right presently exists. Plaintiff simply cannot maintain an independent Brady claim and therefore Monell discovery on this basis is unjustified.

Additionally, as set forth in defendants' original motion papers, in order to set forth a Monell claim based on a "failure to train" theory of liability, the plaintiff must show that the alleged failure "will frequently cause a deprivation of a citizen's constitutional rights." Walker v. City of New York, 974 F,2d at 297-98. A single incident alleged in a complaint, especially if it involved only actors below the policymaking level, generally will not suffice to raise an inference of the existence of a custom or policy." Dwares v. City of New York, 985 F.2d at 100; see also Gan v. City of New York, 996 F.2d 522, 536 (2d Cir. 1993 (Section 1983 claim legally insufficient where plaintiffs "failed…to allege any facts to support their contention that the challenged actions were in any way related to a custom or policy promulgated by the New York County District Attorney's Office").

Here, although plaintiff has arguably recited some of the descriptive language of the Walker factors in his Second Amended Complaint, he has failed to make any factual allegations that

---

[6] Under plaintiff's analysis, even if a Section 1983 plaintiff could not prove that he was falsely arrested or maliciously prosecuted, he could sustain an independent Brady claim based upon speculative exculpatory materials; an absurd and contradictory result.

7

would, if proven, support a finding that those factors were actually obtained. Plaintiff has also failed to allege, with any factual specificity, the history of malfeasance by New York County prosecutors necessary to support a rational inference that any such "failure to train" occurred. Not only is plaintiff's reliance on cases involving Brady reversals not relevant to the unique situation presented by plaintiff Ambrose, but in a period spanning from 1982 to 2004, plaintiff has found only 8 cases in which a Brady violation was even implicated by the conduct of Assistant District Attorneys. This is eight cases of no less that 100,000 indictments – hardly enough to show a pattern of misconduct. See Cousin v. Small, 325 F.3d 627,637 (5th Cir. 2003) (a "small number of cases [involving Brady reversals], out of thousands handled over twenty-five years, was insufficient to establish that the District Attorney was deliberately indifferent to establish a failure to train claim).[7]

Finally, based purely on a factual analysis, the Rison information should not be considered Brady material.[8] In the first instance, contrary to plaintiff's assertions of complete ignorance of Rison's existence, plaintiff certainly knew of Rison and the fact that he possessed information about the shootings. There is no improper suppression within the meaning of Brady where the defendant knew, or should have been known, of the essential facts permitting him to take advantage of any exculpatory evidence. United States v. Diaz, 922 F.2d 998, 1007(2d Cir. Dec. 1990) citing United States v. Robinson, 560 F.2d 507, 518 (2d Cir. 1977), cert. denied, 435 U.S. 905 1978); United States v. Brown, 582 F.2d 197, 200 (2d Cir.), cert. denied, 439 U.S. 915  (1978). In the instant case, plaintiff was aware that there was an informant (Rison) that had information of the shooting. In fact, the District Attorney disclosed to plaintiff the Complaint Follow-Up Informational  (Exhibit B annexed to the Bynon Reply Declaration, Numbered 622-623), that clearly stated that an individual

---

[7] Plaintiff also argues that defendants' legal argument that Brady obligations are now so obvious that little of any training is required "reflects their deliberate indifference to the necessity of such training." (Pls. Opp. pg. 5, ¶ 1).  Plaintiff's giant leap of logic is without merit.  Defendants merely set forth the legal argument rather than assert that no training is, in fact, conducted.

[8] Plaintiff claims that at a court conference, Judge Chin "in no uncertain terms," indicated that he felt the information was Brady  material.  Plaintiff misrepresents the context of Judge Chin's comment and does not cite to any record of such.  In fact, Judge Chin's comment that the information appeared to be Brady material occurred only after a cursory review of the facts and without a full record as set forth above.

had contacted crimestoppers and reported that "Damon [Williams] had told him about the shooting." (Exhibit B). Plaintiff was further provided with the Complaint Follow-Up informational indicating that this informant positively identified five individuals connected to the shooting "mentioned to him by the subject, Damon Williams." (Exhibit C, Numbered 624). Significantly, in the Complaint Follow-Up provided to plaintiff, the informant (Rison) identifies each individual and their role in the shooting as follows:

> Duane Thomas, AKA Bird was identified, driver of Vehicle
> Jose Zuniga, In Vehicle possible lookout
> Ronald Ambrose
> Ramone Cross, brother of Damon Willaims
> Randy Picard, involved in the shooting with Damon Williams

(Exhibit C). Plaintiff was also provided with the grand jury testimony of Detective Buonsante as provided at Damon Williams grand jury proceedings. (See Exhibit D, Grand Jury testimony, annexed to the Bynon Reply Declaration). Significantly, ADA O'Connell questioned Detective Buonsante regarding his contact with the informant and names him as Andrew Rison. ADA O'Connell indicates that Andrew Rison just left the grand jury room. (See Exhibit D, Grand Jury testimony, pg 45 line 18 to 46 line 7). Detective Buonsante further testified that Rison had knowledge of the shootings based on his conversations with Williams. (Exhibit E, pg. 46 line 21 to 47 line 2).

Based on this information alone, plaintiff certainly was in possession of information that an informant by the name of Andrew Rison told police that Damon Williams told him about the shooting and who was involved. Plaintiff also was aware that Rison testified at William's grand jury. Moreover, in the complaint follow-up, Rison does not attribute any role to Ronald Ambrose, although he identifies others as having been named by Williams as perpetrators in the crime. Plaintiff certainly could have discovered additional information, including the hearsay statement that Ambrose was not involved in the shooting by seeking to interview Andrew Rison. Plaintiff, who certainly had knowledge of Rison's existence, does not allege that Rison refused to speak with defense counsel before trial. In fact, it is very likely that plaintiff knew Andrew Rison, as evidenced by the fact that Rison could identify Ambrose and Ambrose is also related to Damon Williams (they are cousins,

according to Ambrose).  In sum, plaintiff certainly knew, or should have known, of the essential facts permitting him to take advantage of any exculpatory evidence.  U.S. v. Diaz, 922 F.2d at 1007.

Moreover, evidence that is not admissible under the usual rules of evidence is not material under Brady, because it never would have reached the jury, and, therefore, could not have affected the trial outcome.  See Wood v. Bartholomew, 516 U.S. 1, 6-7 (1995) (defendant did not have a right to disclosure of inadmissible polygraph results of prosecution witnesses); Scarpati v. United States, 93 Civ. 740 (JFK), 1994 U.S. Dist. LEXIS 7492, *7-8 (S.D.N.Y. June 4, 1994)(undisclosed FBI report not Brady material where they are not admissible); Rodriguez v. Mann, 94 Civ. 1771 (PLK)(BAL), 1995 U.S. Dist. LEXIS 18513, *23 (S.D.N.Y. 1995) (undisclosed police reports containing witness statements are not Brady material because such reports are inadmissible hearsay). In the instant matter, the evidence cited by plaintiff – that Williams told Rison that Ambrose did not have anything to do with the shootings – is double hearsay.  Williams could not be compelled to testify at trial as to these statements and Rison would have faced a hearsay problem if asked about William's statement.

Nevertheless, the determination of whether the information was Brady material is of no consequence because, as set forth above, plaintiff cannot set forth an independent Brady claim  of constitutional dimension.  Plaintiff has completely failed to set forth any factual support or legal authority to support his claim that a Brady claim can be sustained where an individual in acquitted. As a necessary result, plaintiff should not be permitted to engage in Monell discovery when he cannot establish the required underlying constitutional violation.

## POINT II

### BIFURCATION OF DISCOVERY IS APPROPRIATE.

Plaintiff asserts that defendants' motion for bifurcation has already been ruled upon by Judge Chin at the August 10, 2004 hearing.  Plaintiff correctly states that the purpose of that hearing was to hear argument on the plaintiff's motion to compel Monell discovery.  (see transcript attached to plaintiff's opposition papers).  However, plaintiff omits the fact that the very necessity for the instant

motion to dismiss was based on the fact that plaintiff had never clearly enunciated what their Monell claim against the D.A.'s office was. Judge Chin allowed him one last opportunity to clearly define his claims. Now that such claims are purportedly defined, defendants renew their request for bifurcation, as the issues are now clear. For the reasons set forth in defendants' original motion papers, bifurcation is appropriate in this matter.

## CONCLUSION

For all the foregoing reasons, and upon all of the papers submitted in this matter, defendants respectfully request that the Court dismiss all purported Monell claims, or, in the alternative, bifurcate discovery of the Monell claims, together with such other and further relief as this Court may deem just and proper.

Dated:   New York, New York
         January 7, 2005

>                         MICHAEL A. CARDOZO
>                         Corporation Counsel of the City of New York
>                         Attorney for Defendants City of New York, Buonsante,
>                         Danahar, Shields and Rosario
>                         100 Church Street
>                         New York, New York 10007
>                         (212) 788-1029
>
>                         By:   LEAH A. BYNON (LB0321)
>                         Assistant Corporation Counsel

11